Good morning. If it pleases the Court, my name is John Wright. I represent the appellant, Coker Equipment, Inc. I'd like to reserve a couple minutes for rebuttal, if I may. You're also a cross appellee? Correct. That's correct. On the attorney's fees issue? On the attorney's fees issue. This case primarily revolves around the judgment that came out of a bench trial. There's also a part of appeal that we have for the summary judgment that was entered against my client's claims. The bench trial was solely upon the counterclaims filed by Citiwest concerning breach of contract and abuse of process. The bulk of the judgment, what the main focus of the appeal is, I believe, is on the breach of contract claim and the question of whether or not my client was required to provide reasonable assurances of his ability to perform. That is, in delivering clear title to the crane. And secondly, maybe what should come first is whether or not Citiwest was entitled to request adequate assurances. It's unclear from the record exactly how it began, but the first writing concerning the title to the crane came from my client, Coker Equipment, in response to what I believe would be an oral request or something in a telephone, because there's nothing in writing. But my client provided Citiwest a copy of a release of the security agreement, which concerned the crane when my client originally purchased it, and that was from GE Capital. That release was provided and stated clearly that it released the Liebherr 290, which is the subject of this lawsuit. That was provided to Citiwest at their request. Immediately afterwards came another request, this time coming from their attorney, where the attorney for Citiwest asked that they provide any and all releases concerning any collateral that may be encumbered by any creditor of Coker Equipment. He also provides in that a print-off from the Internet, which presumably is some sort of compilation of UCC filings and tax liens that may be against Coker. There are other entities that are mentioned on this Internet document. The document is never authenticated. We don't know exactly where it came from. It's not mentioned in the letter where it came from. The actual UCC-1 that it is referencing is never provided during the entire course of the case. So we don't really know what was in the UCC-1. However, what is in the Internet filing, which mentions this UCC-1, is several encumbrances to Coker's equipment and proceeds. What is the legal standard that you are asking us to apply to the review of these matters, where the judge is sitting as the fact-finder? What legal standard are you asking us to apply? I had a hard time figuring that out from your brief. Okay. Well, I'll try to make it clear. But the Court ruled that the City West had made a request for adequate assurances based upon clouds to title, which were shown in the Internet document provided by City West's lawyer prior to the time of the exchange. And that alone is a legal error. In other words, your position is that the trial court's finding of that factually was legally impermissible, having heard the evidence? No. The Court – I don't think it was a factual finding. I think it was a legal finding that those were clouds on title. They could not be clouds on title to this crane. Well, now, okay. You had a partial summary judgment. And the partial summary judgment was on what? And then you had a bench trial. Correct. The partial summary judgment had to do with my client's complaint. The complaint was filed by Coker Equipment alleging that City West had overused the crane. The crane was on a lease to purchase. And during the time of the lease, City West was only to use the crane for no more than 250 hours. So it was about the 250 hour. It was an interpretation of the 250 hours. That's what that was about. And the Court considered also parole evidence and also considered there was something about your client gave 175 extra hours because of the three-week. The setup took longer. It wasn't ready for three weeks because it wasn't certified and all of that. Correct. And so on the partial summary judgment, the Court interpreted the contract along with parole evidence and decided that – what the 250 hours meant, right? That is correct. Okay. So the stuff that you're talking about right now, was that part of the bench trial? That was the bench trial. Okay. Yes. So that goes back to what Judge Lynn's saying. When a court hears evidence on a bench trial and makes certain factual determinations and hears both sides of it, what's the standard of review there? You know, it would appear after the trial that the judge didn't believe your client about certain things. With respect – And that's one of the functions that you – when you do a bench trial, that a trial judge does. Understood. You decide who you believe. Understood, Your Honor. But specifically with respect to the issue of whether or not there was reasonable insecurity to request adequate assurances, the number one thing you have to look at is what is the quality of the evidence that's being presented. And what I'm saying about what was presented as the basis for the reasonable insecurity was this – let's even call it the UCC-1 – that had to do with equipment and proceeds. But it's a little more global than that because the court's hearing other evidence, all right, that, you know, the court hears a bunch of other evidence. And some of the other evidence that my understanding – you can correct me if I'm wrong – is that the court heard that we have a couple of motors that are rebuilt during this. You know, you've got this agreement where they can lease it and they've got the option to buy. You've got a couple of breakdowns of these motors and these motors get rebuilt, which it appears to be that there's some evidence that that makes the crane more valuable. And so that, you know, you've got one side that's thinking, okay, I've got a better purchase – you know, I'm getting a better crane than I initially thought and they want to do it. Then you also have testimony that they believe that there's these certain UCC problems and they don't want to buy a crane only to find out that then someone else, they're going to pay for it and then they're going to have to fight about whether they're a bonafide purchaser or, you know, or someone else can take it away and they lose all their money. So, you know, and then the court's hearing all these things about when Mr. Coker actually testifies, you know, that there's these liens that are filed for the double charges and the court hears testimony that Mr. Coker doesn't actually know that there's double charges and in the place where these are going on that he would have to have double charges. They'd be having to use the crane at night and that you can't use the crane at night in what, I think it was San Diego or something and all of these things. So the court hears all of this stuff that goes on. So when you just sort of pick out that, I don't think that that's what the court's, you know, the court's assessing all of this and deciding what would have been, you know, were they entitled to ask for more and was your client required to produce more and so all of those other things kind of bleed into it. And the question about what they produce has to do specifically with title to the crane. Do you have title to crane? That's the only issue with respect to the breach of contract. Well, but would the court have been within its rights to say when it finds out that your client filed these liens when your client had no information that actually said that, you know, filed these double billing things, filed these liens when your client, in fact, had no information that, you know, anything tended, you know, any real belief that they were double, I don't know what you call it. Double shifting. Double shifting. That, you know, that doesn't make a very good impression on a trial judge. I can understand that, Your Honor. However, what we're talking about specifically is the ruling on whether or not my client had presented adequate evidence of his ability to transfer a clear title. But if you come out in a whole bench trial as, you know, because I think it's, you know, yeah, you have to say it's a legal matter, but there's certain factual determinations. And if you come out to a trial judge as appearing to be shifty and not and making claims that you had no basis for and possibly, you know, the court obviously believed that your client filed these liens in bad faith and found punitive damages and all of those things, those all flow over. And that's what people, that's what judges do in bench trials. And I'm having a hard time seeing how, you know, we didn't actually hear that. How do we get past that? We didn't see the actual people. We didn't, you know, we don't know, you know. Well, let me just say, we're talking about two different, we understand we're talking about different liens here. You're talking about the liens that you're talking about are liens that my client filed, not against City West, but against the property, and they were never executed upon. The liens that City West is talking about comes before this, which are. . . Oh, yeah, I know they're talking about different liens, but all of that evidence is part of the bench trial. Right. And is part of that, and is part of why someone might feel that they need more assurances from someone. Well, let's, and I'm fine. Let's suppose that those assurances are, there's reasonable insecurity. The question is, has my client provided adequate assurances? As a matter of law. As a matter of law, exactly. And number one, they requested, I want adequate assurances that these UCC1s are not going to affect my crane that I'm purchasing. Absolutely, not a problem. Number one, on the face of the documents alone, you can tell that. The face of the documents that you presented to COCR, you can tell that these do not pertain to the Lee Bear 290, number one, because they deal with equipment, and equipment is not inventory. They are mutually exclusive terms. Equipment is what, is this. This is the desk. It's the stuff that I use to run my business. It's not the stuff that I sell. The stuff that I sell is my inventory. I'm selling you my inventory. This UCC1 that you presented to me as a basis for your inadequate, or for your insecurity, is not a legal basis. It does not, as a matter of law, looking at the Uniform Commercial Code, the definitions, and we're talking about the UCC because we're talking about a UCC1, cannot in any way ever encumber the Lee Bear 290. That's number one. Number two, my client presents him with a release from the secured creditor who originally loaned the money for the crane. They even acknowledge that that release is fine. They do that in their subsequent letter by Bernie Wittig, the record at 935, where they say, you're willing to make assurances, but we'd like to have releases. The GE release is a proper release. All right, so they've already acknowledged that that's a proper release. Now they go beyond that. City West says, but I want a release from every one of your secured creditors. All right, well, regardless of whether or not they have anything to do with this crane, my client still gives it to them, sends them every security agreement they have for every piece of inventory that they have, and that still doesn't satisfy them. Well, let me ask you what you meant by what you just said. Sure. You didn't mean to suggest that your client furnished to City West releases from every one of your creditors. No. But that's what you just said. No, no. Presented the actuals. No, I believe I said the security agreements. Well, you said that's what they provided. That's what they provided. What they requested was releases. I understand. But security agreements do not have this piece of equipment in it. This is the ask for. I want to know about all of your collateral, all of your security agreements. Fine. They ask for releases, but asking for a release from somebody who doesn't even have a security agreement with you concerning this piece of property is a little overboard. They're not going to provide that to you. But we provided every security agreement regarding every piece of collateral, which is what they requested. Because, remember, what they asked for was I want to know about every piece of collateral and how that pertains to City West. We sent it to them. Here's every security agreement we have. Notice the Lee Bear 290 is not mentioned in any way. It mentions all these other different specific pieces of inventory we have, different Lee Bears, different tower cranes, et cetera, et cetera. They're not mentioned here. They're asking us to prove a negative, prove to me that there's nothing here. Here's everything we do have. Here's the release from the secured party with respect to this particular crane that was dated months before this issue came up. Okay. You just about used your time if you want to reserve some. I will reserve. Responding. Okay. Thank you. Good morning. May it please the Court. Joe Hardy on behalf of Appellee slash Cross Appellant City West Structures, California, Inc. Real briefly before I get into my outline, I wanted to touch a couple points that opposing counsel addressed, and specifically, first of all, the reasonable insecurity issue. As Judge Kelland pointed out, the reasonable insecurity arises from the totality of the conduct up to that point. Another issue raised by Judge Lund is the adequate assurances. Whether there were adequate assurances is actually a question of fact. Then this inventory versus equipment issue, as noted in my brief, was never raised by COCR at the time it was dealing with City West, was never raised by COCR pretrial, was never raised by COCR during the trial or in post-trial motions. So that entire argument should be excluded solely on that basis. Additionally, the COCR's responses to City West when it requested the adequate assurances ignored the California tax lien. They did not provide any of the UCC statements as to these other pieces of collateral that COCR admits. Yeah, we have loans with these people, but they didn't provide the UCC statements either to City West at the time they requested them, didn't provide releases. And so their response to City West's request for adequate assurances was wholly inadequate. Well, City West cut a check, right? They had a check waiting to pay. That's correct, Your Honor. They were demanding certain things. That's correct, Your Honor. City West cut the check, gave it to a gentleman named Dave Hanson of UPA in Las Vegas, because COCRs based in Las Vegas had it there ready and waiting if they could work this out. And notably, as Your Honor pointed out, the trial court obviously, you know, to put it mildly, did not believe any of COCR's story based on certain testimony and certain admitted facts. Going back to the initial question the court had for opposing counsel, the standard of review here, I believe, falls under the clearly erroneous or the abusive discretion standard. You have a lot of findings of fact here. All those findings are used to apply to the elements of the causes of action. And the court recently clarified that standard in the Hinkson case, in quoting the McConney case earlier as well. So the standard we're looking at is a clearly erroneous or abusive discretion standard. And, you know, COCR would have the court view this issue in a vacuum. It would have the court ignore all of COCR's prior wrongful conduct that the district court found. And I could go through the litany of things. From the very beginning, the crane was not Cal OSHA compliant. COCR made City West pay for three weeks, even though it couldn't use the crane during that time. COCR didn't provide an hour meter. They didn't provide appropriate jumping equipment. City West had to buy a cable. As Your Honor pointed out, the hoist motor ceased functioning three months into the deal. A month or two after that, the swing motor ceased functioning. When City West dealt with the hoist motor issue, it asked around because COCR wasn't being very responsive and found that COCR had a poor reputation in the industry. What does the record show about that? Well, as the trial court took it, it goes to City West's state of mind. What did it learn? Bad reputation. That the manufacturer of this crane would not sell another motor to COCR. So we were, you know, obviously City West being a subcontractor, the general contractors putting pressure on City West. Look, we need the crane. The crane was the only crane on this tower, and so we're calling around trying to get the motor in place, and lo and behold, the manufacturer of the crane says, Look, I'm not even going to touch COCR. I'm not selling anything to them. At what point did your client decide to buy the crane? Well, my client was initially interested in purchasing it, obviously from the very beginning. Throughout the project, City West had been leasing – well, strike that. Before the project, City West had been leasing cranes in its business, and I believe Mr. Wittig testified at trial that at this point in time, City West decided, Okay, enough leasing, let's buy something. And so that's what they were interested in doing from the very beginning. That's why there was an option. What's that? That's why there was an option. That's correct, Your Honor. And as the court pointed out earlier, with the two motors now being rebuilt and City West having a good cable in place, the crane was obviously worth even more than the $250,000 that the parties, when they entered into the contract, had determined its value. So when it goes to exercise the option for $109,000, well, it only makes sense that it wants to buy it. Going back to this, you can't view it in a vacuum, the documents that COCR provided when City West asked them about title were either undated documents, years-old documents, and, again, didn't address the tax lien, didn't provide any UCC statements or releases from any of the parties. When City West said, Okay, you know, we have this issue. Let's try and deal with it. Give us some more time. COCR writes back and says, quote, If I don't get my money tomorrow, there is no deal! It kind of shows you, as the trial court found, the type of person that Mr. COCR is. Shortly after that, a month later, all of a sudden COCR sends City West a bill for $210,000, you know, 13 months into the lease, or strike that, probably 12, 13 months into the lease. COCR then, when City West says, you know, this is crazy, let's, you know, you breached the option agreement. Let's work this out. Let's walk away. COCR then threatens City West and says, you know, of course that's not in the contract, and you know what I'll do if you fail to give me those. And we find out what COCR does. It goes to the general contractor, Pinnacle, and says, look, City West owes me $300,000 and liens the product. Well, I think we know those facts. You've got your issue that you've got to cover, which is on the attorney's fees. So why don't you address that? It appears that what there's Brunzel to the Brunzel factors, how did the court abuse that? It just seemed that the court felt like, hey, you've got enough money. And so, but pretty much courts have wide latitude in determining attorney's fees. Why was the court wrong? Sure. Thank you. Thank you, Your Honor. I appreciate that. As Your Honor noted, the courts do have wide discretion in that issue. The Brunzel factors are advocates' professional qualities, nature of litigation, work performed, and I think most importantly, the result. And so in this case, the result was a near total win for City West. COCR sued City West. City West won summary judgment on COCR's claims and prevailed at trial, not only on the breach of contract, but also the breach of the covenant of good faith and fair dealing and the abusive process. So the court, I don't believe there's any evidence in the record that the trial court considered the work performed, the nature of the litigation, the advocates' professional qualities. The one factor it did consider, rather than view that in City West's favor, it should have viewed it as City West, yeah, gained most of what it, almost all of what it asked for and therefore shouldn't be entitled to the fees requested. The Hornwood case that COCR cites actually favors City West. In that case, the plaintiff sought $2 million. The court said, you're entitled to $5,000. But as to attorney's fees, they awarded $50,000 in attorney's fees. The Nevada Supreme Court Albio's case holds that it's an abuse of discretion for the court to award fees far below those that were actually incurred. And so here we have a case where City West incurred over $100,000 in attorney's fees. Costs are included in this too, right? Yes. As costs, we, well, as fees, City West had $106,000 and $6,000-something in costs. When we moved for fees post-trial, we voluntarily wrote off, said, okay, $16,000 of that, that's okay, we'll seek $90,000. And so we have fees. And the costs, the court went from $6,000 plus to $5,000. What specific costs are reduced? Well, that's a great question, Your Honor. The trial court ---- It's just a total number without allocation. That's correct. And clearly, if the court concluded that certain exemplified documents were not proper, we wouldn't even have ---- there wouldn't be a standard on which we would reverse that. Your complaint is that it's a total number without knowing what the court reduced. That's correct. There's really no reasoning other than City West almost completely prevailed. A couple points that I want to ---- So the court could probably get to, the court could probably, if it exercised its discretion, could probably get to $50,000. So that doesn't mean that, but what you're saying is the court didn't say any of that, so you're entitled to a remand to make the court roll up its sleeves and go through that and say why you're not entitled to it. Right, and that's really why it goes to the abuse of discretion, is we don't have any reasoning other than City West almost completely prevailed. So no good deed goes unpunished? Is that what your argument is? Yes, Your Honor. Thank you. One thing I wanted to address real quick was the breach of the implied covenant of good faith and fair dealing. Coker throws that away in a footnote. I may not have addressed it as well as I should have in the briefs, but there's a recent case out of the District of Nevada that is the Turk v. TIG Insurance, 616 F. Supp. 2nd, 1044, April 2009 case that quotes another Nevada Supreme Court case at Hilton Hotels. But the rule on the breach of the implied covenant of good faith and fair dealing is that a breach of the duty of good faith and fair dealing can occur where the terms of the contract are literally complied with, but one party of the contract deliberately contravenes the intention and spirit of the contract. And so obviously City West's position is, first of all, Coker did breach the contract. However, if you want to get into the other thing, is that if it didn't deliberately breach it, the express terms, it certainly contravened the spirit of the contract. And so you can find that without necessarily finding a breach of contract. If the Court has any other questions, I'd be happy to address them. Thank you, Your Honors. Thank you. Thank you. Thank you. First off, just to make the record clear, Coker did provide the release for the crane. The question that counsel stated, that we did not provide any release, is true. The very first thing we did was provide a release. In fact, there was no written request for the release, but it was provided right off the bat from GE Financial, which they've accepted as a true release of the crane. In terms of the attorney's fees, the Brunzel factors were all debated in the briefs. The Court has complete discretion. In Nevada, the Court does not allow or is not required to file the Lodestar. It can basically be used to file the Lodestar. Well, but how do we know how the Court got to 50,000? Well, the fact that the issues were argued, number one, they were before the Court. And secondly, you have to remember that the Coker equipment, in order to just pursue its claim, had to go in front of the Court and was granted a motion to compel discovery. This is a one-day bench trial. The only pretrial motions that were there were the summary judgment motion filed by CityWest, which was preceded by the motion to compel discovery. The motion for summary judgment couldn't even be dealt with until they would actually produce the crane logs, which were withheld pre-litigation, withheld during litigation, consumed a vast majority of time. Thank you. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning. Our Court stands adjourned.
judges: Lynn, Schroeder, Callahan